RECORD NO. 24-6270

---

In The

# United States Court of Appeals
### For the Fourth Circuit

## PATRICK RYAN McGRAW,

*Plaintiff – Appellant,*

v.

## THERESA C. GORE; NANCY J. WARGAS,

*Defendants – Appellees,*

AND

## N.C DEPARTMENT OF CORRECTIONS; KIMBERLY C. WYNN; JOHN DOES,

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH**

———————————

## APPELLANT'S BRIEF

———————————

David W. McDonald
McDonald Wright LLP
330 South Greene Street, Suite 100
Greensboro, North Carolina 27401
336-574-0200
Counsel for Appellant

# TABLE OF CONTENTS

Disclosure Statement ……………………………………….…  i

Table of Contents ……………………………………………  iii

Table of Authorities ………………………………………  iv

Jurisdictional Statement …………………………………..  2

Statement of Issues Presented for Review ………………...…..  3

Statement of the Case

      Statement of the Facts ……………………………….  3

      Procedural History ………………………………...…..  8

      Rulings Presented for Review …………………………  9

Summary of Argument ………………………………………  9

Argument …………………………………………………  11

      Standard of Review ……………………………………  11

      I.     McGraw exhausted his administrative  …………...  12
      remedies in accordance with the terms of their provisions.

      II.    The administrative remedy is so opaque that it is,
      practically speaking, incapable of use. ……………………  14

      III.   There is a genuine question of material fact fact  ….  16
      whether McGraw was able to submit a grievance form.

      IV.   Equitable tolling extended McGraw's deadline …….  17
      for filing a written grievance under the ARP beyond
      the date of his release.

Conclusion ………………………………………………  18

Certificate of Compliance ……………………………………  19

Certificate of Service ………………………………………  20

# TABLE OF CASES AND AUTHORITIES

Cases

*Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2014). ....................... 18

*Anderson v. ATZ Core Health Services, Inc.,* 407 F.3d 674, ..... 11
　683 (4th Cir. 2005).

*Custis v. Davis,* 851 F.3d 358, 361 (4th Cir. 2017). ................. 12

*Griffin v. Bryant,* 56 F.4th 328 (4th Cir. 2022). ....................... 16

*Jones v. Bock,* 549 U.S. 199, 216, 217 S.Ct. 910, ................... 11
　166 L.Ed.2d 796 (2007)

*Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). ............... 14

*Ross v. Blake,* 578 U.S. 632, 136 S.Ct. 1850, .......................... 15
　195 L.Ed.2d 117 (2018)

*Shaw v. Stroud,* 13 F.3d 791 (1994). .................................... 12

Statutes

28 U.S.C.§1291 ............................................................. 3

28 U.S.C.§1331 ............................................................. 2

28 U.S.C.§1343 ............................................................. 2

28 U.S.C.§1367 ............................................................. 2

42 U.S.C. §1983 ............................................................. 2

42 U.S.C.§1997e ........................................................... 11

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-6270__        Caption: __McGraw v. Gore and Wargas__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Patrick Ryan McGraw__
(name of party/amicus)

_____

who is _____Plaintiff/Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                 ☐YES☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                 ☐YES☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____ June 13, 2024 _____

Counsel for: Patrick Ryan McGraw _____

- 2 -

[ Print to PDF for Filing ]

RECORD NO. 24-6270

_____

In The

# United States Court of Appeals

### For the Fourth Circuit

## PATRICK RYAN McGRAW,

Plaintiff – Appellant,

v.

## THERESA C. GORE; NANCY J. WARGAS,

Defendants – Appellees,

AND

## N.C DEPARTMENT OF CORRECTIONS; KIMBERLY C. WYNN; JOHN DOES,

Defendants.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH**

_____

**APPELLANT'S BRIEF**

_____

## JURISDICTIONAL STATMENT

The District Court had jurisdiction over the subject matter and parties to this cause pursuant to 28 U.S.C.§§1331, 1343 and 1367. This is a denial and delay of access to medical care action based upon violations by defendants of the constitutional guarantees and rights granted to plaintiff by the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, coordinate provisions of the Constitution of the State of North Carolina, 42 U.S.C. §1983, and various provisions of the common law and statutory law of the State of North Carolina.

McGraw was a prisoner in the North Carolina's Tabor Correctional Institute, where he became infected with a pathogen that exhibited symptoms of cold or flu, but which was instead a flesh-eating organism that invaded one lung and migrated to his brain, ultimately requiring removal of a lobe of one lung, and craniotomy to remove diseased brain tissue. McGraw pleaded with medical personnel to provide him with access to a doctor, but the nursing staff refused access until a mass developed in his lung, at which point, the infection had taken hold and had caused considerable permanent damage.

The Court of Appeals has jurisdiction over this cause pursuant to the provisions of 28 U.S.C.§1291. The final Order and Judgment disposing of all claims against all parties was filed and entered on February 26, 2024. Plaintiff filed his Notice of Appeal on March 20, 2024.

This appeal is from a final order disposing of all claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the trial court err when it granted summary judgment to defendants, and dismissed all claims?

## STATEMENT OF THE CASE

## STATEMENT OF THE FACTS

Plaintiff was convicted on December 8, 2015 of certain crimes. Ja43-45. In April 2016 through June 2016, Plaintiff was an inmate at Tabor Correctional Institution in Tabor City, North Carolina. JA157.

At the beginning of April 2016, including as of April 5, 2016, Plaintiff was assigned to perform weed eating work near a swamp outside of the facility. JA157. Plaintiff became very ill shortly after performing the work, including a high fever, profuse sweating, and a harsh cough which caused painful burning in Plaintiff's lungs. JA157-58. Plaintiff turned in multiple sick requests. JA157-60.

- 4 -

On April 18, 2016, Plaintiff was seen by Defendant Gore and Plaintiff's signs and symptoms, including, headaches, discharge and nasal congestion, and a productive cough with yellow sputum, were explained to Defendant Gore. JA163-64. However, by the time Plaintiff was finally allowed to receive medical treatment, which was provided through Defendant Gore, Plaintiff's blood pressure was normal, and on exam, Defendant Gore reported that Plaintiff's nasal discharge was clear. JA163-64. Plaintiff was dismissed by Defendant Gore with having cold symptoms. JA163-64.

Plaintiff continued to have other symptoms and turned in other sick requests, as well as emergency sick call requests. JA163-64. On April 21, 2016, Plaintiff had a follow up for his emergency visit request and was seen by Defendant Gore. JA59-61. At that time, a review of Plaintiff's symptoms included neck stiffness, nasal discomfort, nasal discharge, nasal congestion, a productive cough, and muscular weakness. JA59. On examination, Defendant Gore reported that Plaintiff had clear nasal discharge and dry mouth, and Defendant Gore assessed Plaintiff as having impaired comfort related to cold symptom. JA60-61. Defendant

- 5 -

Gore dismissed Plaintiff with nothing other than cough syrup and Phenylephrine 5mg. JA61.

On April 22, 2016, Plaintiff was seen by Defendant Wargas and complained of flu symptoms, including cough, aches, pain, and chills, which were noted in a review of Plaintiff's symptoms. JA164-66. Defendant Wargas assessed Plaintiff has having impaired comfort due to "cold/flu like symptoms." JA63. Plaintiff was dismissed by Defendant Wargas to follow up as needed. JA63.

On April 27, 2016, Plaintiff was seen by Defendant Gore for a follow up of Plaintiff's cold/flu symptoms and noted that Plaintiff was feeling bad, had no energy, headaches, sinus congestion, and was coughing up brown phlegm. JA65-67. The record for this visit has a time of 06:43. JA65-67. Defendant Gore dismissed Plaintiff's concerns and medical condition and assessed Plaintiff as merely having cold symptoms. JA67. An administrative note was added to this visit, with a time of 07:15, by Defendant Gore, and Defendant Gore noted therein that Plaintiff had "bulging pearly tympanic membranes and elevated temp. of 99.4 being referred to provider today for further evaluation." JA68.

- 6 -

On April 27, 2016, Plaintiff was seen by Kimberly C. Wynn, PA-C, for Plaintiff's evaluated back pain, cough, weakness, headache, fever, and chills for over one week. JA69-72. This record has a time of 17:12. JA69-72. Plaintiff was started on Amoxicillin and referred to Columbus Hospital for outpatient radiology, chest x-rays. JA68-73.

On April 28, 2016, an administrative note was entered by Wynn, PA-C and included therein that she received a telephone call from Defendant Gore, who informed Wynn, PA-C, of Plaintiff's x-ray findings and that Plaintiff was ill appearing with no appetite. JA74. Plaintiff's chest x-ray revealed "mild cardiomegaly and masslike density in the right upper lobe which may represent dense airspace consolidation related to pneumonia and a recommended follow up chest xray to assess resolution." JA74.   A "UR request" was made for Plaintiff to be transferred to the local emergency department, outside medical facility, for evaluation and treatment/admission for "right upper lobe pneumonia, generalized weakness, myalgias..." JA74, 163-64.

The medical records and Plaintiff's deposition testimony shows that Defendants Wargas and Gore refused to allow Plaintiff McGraw to see a physician until Plaintiff's condition had worsened to the point that he

was diagnosed with chronic pneumonia, after an abscess was detected in one of his lungs. JA74, 163-64. The abscess proved to be a form of flesh-consuming organism that due to the delay of care became progressively worse and crossed Plaintiff's brain barrier and created multiple lesions on his brain tissues. JA163-64. Ultimately, Plaintiff McGraw was admitted to UNC Hospitals, in Chapel Hill, where he underwent a lobectomy of part of his right lung, a craniotomy to remove diseased brain tissues and received extensive patient care. JA157-60.

Plaintiff was released from prison on August 11, 2016, after he was released from the inpatient care UNC Hospital. JA43-45 Plaintiff filed a Complaint to initiate this lawsuit on April 25, 2019, after Plaintiff was reincarcerated on April 13, 2018, for which conviction Plaintiff was released on June 12, 2019. JA2, 43-45.

Plaintiff was very very sick, and was unable to submit a grievance for denial of medical care. He needs help writing, and there was no one available to help him. By the time his condition improved enough for him to attend to paperwork, he had been away from Tabor for a long time, and he had completed his sentence and was released when he was able to live on his own. JA160.

- 8 -

## PROCEDURAL HISTORY

McGraw filed a Complaint *pro se* in the United States District Court for the Eastern District of North Carolina on April 25, 2019. (DE1).

The trial court approved the Amended Complaint after frivolity review on November 5, 2019. (DE8)

The trial court allowed defendants' motion to dismiss on September 21, 2020. (DE27), from which McGraw appealed to this Court. (DE29)

This Court vacated and remanded the dismissal of the matter in a published opinion in Case No. 20-7539. (DE33).

Gore and Wargas filed Answer on June 8, 2022 (DE 39).

After completion of discovery, defendants filed motion for summary judgment on July 13, 2023. (DE49-52).

McGraw opposed the motion for summary judgment on September 15, 2023. (DE61-63, 70)

Gore and Wargas filed reply on November 8, 2023. (DE73)

On February 26, 2024, the trial court entered its Order (DE75) and Judgment (DE76) allowing defendants' motion for summary judgment and dismissing all claims.

McGraw filed Notice of Appeal on March 20, 2024. (DE77).

- 9 -

## RULINGS PRESENTED FOR REVIEW

McGraw seeks review of the Order granting summary judgment to all defendants (DE 75), filed February 26, 2024, and the judgment entered the same day (DE 76).

## SUMMARY OF ARGUMENT

The Administrative Remedy Procedure ("ARP") applicable to McGraw in 2016 specifically sets emergency medical situations in a separate category from other inmate grievances, and strongly encourages the inmate to resolve a grievance informally by speaking with an official who is able to address the concern. The procedure for emergency medical issues is for the inmate to present himself to medical staff and request assistance. This is the action that McGraw undertook, and his grievance was resolved by nursing staff sending him to the Columbus medical center emergency room, where he received the relief he sought. This resolved his grievance in accordance with the provisions of the ARP.

McGraw was transferred from Columbus to Central Prison Medical Center in Raleigh upon his release from Columbus medical center. The ARP does not specify how or where a grievance is to be filed, though it does address circumstances where an inmate is transferred during the

- 10 -

pendency of the written grievance process. This is but one of many opaque and unclear provisions in the ARP, which were problematic for McGraw who has difficulty reading and writing, and at this time had undergone a partial craniotomy.

The trial court failed to view the evidence in the light most favorable to McGraw, the non-moving party, when it concluded that medical records refuted McGraw's testimony that he was too ill to attend to paperwork, and that because the policy states that he should be able to obtain assistance, his testimony that there was no one available to assist him with a grievance should not be believed.

This Court has suggested that evidence before it in a different case indicates that the ARP in question has an unwritten equitable tolling provision. If such a provision exists, the tolling should apply to McGraw for at least the time that he was first hospitalized through the time he was returned to Central Prison Medical Center after his release from UNC Hospital. Such a provision would add enough time to the 90-day deadline for filing a written grievance that McGraw did not miss a deadline to file a written grievance before he was released from prison in

- 11 -

August, 2016, and was no longer subject to the Prisoner Litigation Reform Act.

## ARGUMENT

The trial court dismissed all of McGraw's claims on the grounds that he failed to exhaust administrative remedies as required by 42 U.S.C.§1997e, which provides in pertinent part that

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216, 217 S.Ct. 910, 166 L.Ed.2d 796 (2007). Defendants have the burden of proving that the plaintiff failed to exhaust his administrative remedies. *Anderson v. ATZ Core Health Services, Inc.,* 407 F.3d 674, 683 (4th Cir. 2005).

## Standard of Review

The standard of appellate review for the granting or denial of a summary judgment motion is *de novo*. Thus, the court of appeals uses the same standard as the district court. A moving party is entitled to summary judgment if the pleading, depositions, answers to

interrogatories, and admissions of filed, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. *Shaw v. Stroud,* 13 F.3d 791 (1994). Review of dismissal for failure to exhaust available administrative remedies is *de novo. Custis v. Davis,* 851 F.3d 358, 361 (4th Cir. 2017).

## I.   McGraw Exhausted His Administrative Remedies In Accordance with the Terms of Their Provisions.

The pertinent Administrative Remedy Procedure ("ARP") appears at JA107-118. The ARP begins by encouraging inmates to resolve issues without filing a formal grievance:

> .0301(a)    Most grievances can be resolved quickly through informal communication with responsible authorities at the facility in which the problem arose. An inmate should be encouraged to use this method prior to the initiation of a formal grievance. When this method is <u>not possible</u>, the Department of Public Safety seeks to reduce tension and provide a stable atmosphere by providing formal channels of communication of grievances. JA107 (emphasis added)

> .0304(e)    Grievances of an emergency nature will be handled in accordance with section .0308 herein. JA109

> .0308(b)    Any inmate who is in need of urgent medical care may present himself to a member of the medical or custodial staff, who shall handle the matter according to emergency health care procedures set out in the Health Care Manual. If an inmate fears for his personal safety, he may contact the officer-in-charge or any

- 13 -

other custodial official.  Any request for protective custody will be handled in accordance with Prisons policy.  JA112

The present civil action is based upon denial and delay of access to medical care.  As a result of the denial and delay, McGraw's medical condition became an emergency, and McGraw did exactly what the ARP demands he do: he resolved the matter informally by presenting himself to medical personnel, following his submission of emergency medical requests, and seeking medical care from a suitable medical facility. When the nurse authorized McGraw access to the Physician's Assistant, the PA took appropriate steps to order an x-ray, and based upon the results of the x-ray, ordered that he be transported to the local medical center, where he received emergency medical treatment.  McGraw received the medical attention that he required, and thus the matter was fully resolved through the informal method set out in the ARP.

42 U.S.C. §1997e(a) does not require that an inmate file a written grievance, or follow the steps of grievance procedure that might be specified in an ARP.  In order to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively.  Having done that,

- 14 -

a prisoner has exhausted his available remedies, even if prison employees do not respond. *Moore v. Bennette,* 517 F.3d 717, 725 (4ᵗʰ Cir. 2008). In this case, McGraw has followed the requirements of the ARP, received the medical care he sought as contemplated in the ARP, and has exhausted his administrative remedies.

## II.  The Administrative Remedy is So Opaque that It Is, Pracitcally Speaking, Incapable of Use.

Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216, 217 S.Ct. 910, 166 L.Ed.2d 796 (2007).

While the courts may not engraft exceptions to the exhaustion requirement of 42 U.S.C. §1997e(a), the provisions contains three exceptions in its text. Three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief.

1.  An administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.

- 15 -

2.    An administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.

3.    When prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.  *Ross v. Blake,* 578 U.S. 632, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2018).

The ARP does not specify how, or where, a grievance must be filed, but does have a provision relating to processing of filed grievances after an inmate is transferred during the processing period.  McGraw was transferred almost directly from Columbus medical center to Central Prison Medical Facility in Raleigh.  Thus, none of the provisions of .0311 applies since McGraw did not, and could not, file a grievance at Tabor Correctional Institution.  The clear import of the ARP suggests that it contemplates that a grievance will be processed at the facility where the subject of the grievance occurred, in this case, Tabor.  Presuming that the undefined term, "Facility Head" as used in the ARP refers to the facility head where the inmate is housed, the ARP makes little sense under the

- 16 -

circumstances of this case.  How is the facility head at Central Prison
expected to investigate detailed facts occurring in Tabor, miles away from
Raleigh?  While the District Court observes that the ARP does not
preclude McGraw from filing at Central Prison a grievance about denial
and delay of medical treatment in Tabor, the terms and procedures of
this ARP were no so plain and clear when considered by this Court in
*Griffin v. Bryant,* 56 F.4th 328 (4th Cir. 2022).

## III.  **There is Genuine Question of Material Fact Whether McGraw Was Able to Submit a Grievance Form.**

McGraw submitted his affidavit in opposition to defendants' motion
for summary judgment.  In his affidavit he states that

> I was very very sick, and was unable to submit a grievance for
> denial of medical care.  I need help writing, and there was no
> one available to help me.  By the time my condition improved
> enough for me to attend to paperwork, I had been away from
> Tabor for a long time, and I had completed my sentence and
> was released when I was able to live on my own.

JA160.

The trial court examined medical records to find evidence
contradictory to McGraw's statements, but this effort simply exposes that
a genuine dispute exists as to McGraw's mental state, and whether
someone was actually available to prepare a grievance on McGraw's

- 17 -

behalf. The medical records are not conclusive, and indicate that McGraw exhibited memory deficiencies, and were not prepared for purposes of determining his mental fitness to submit a grievance form, or to obtain assistance in preparing one. In this regard, summary judgment for defendants was premature. *Griffin v. Bryant,* 56 F.4th 328 (2022).

## IV.  Equitable Tolling Extended McGraw's Deadline for Filing a Written Grievance Under the ARP Beyond the Date of His Release.

In *Griffin,* this Court observes that in 2016, it appears that the North Carolina ARP may have had an equitable tolling period. *Id.,* at 337. If there is an equitable tolling period, surely that tolling ought to take into account the weeks following his first admission to Columbus medical center through at least the time he was returned to Central Prison, on June 10, 2016, if not longer, adding at least 43 days to his 90-day deadline for filing a written grievance, placing his deadline to at least September 8, 2016, nearly a month after his release. If, as this Court in *Griffin* mused, there is an unwritten tolling provision that applies to the North Carolina ARP, McGraw was not in custody long enough for his

filing deadline for filing a written grievance to expire, thus relieving him of any condemnation that he failed to file a timely written grievance.

In granting summary judgment, a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts. *Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2014). The District Court in this case resolved contested facts and did not view the facts in the record in the light most favorable to McGraw, the non-moving party.

## CONCLUSION

For the foregoing reasons, McGraw respectfully prays that this Court vacate the Order and Judgment filed February 26, 2024, and remand for further proceedings.

This, the 13th day of June, 2024.

David W. McDonald
North Carolina State Bar No. 12814
McDonald Wright LLP
220 South Greene Street, Suite 100
Greensboro, North Carolina 27401
336-574-0200 voice
336-574-0201 fax
dmcdonald@mwlawfirm.law

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Appellant's Brief has 3,441 words, according to the automated word count facility provided by the software upon which the brief has been prepared. This number of words falls within the type-volume limitation specified for this document.

This, the 13th day of June, 2024.


/s/ David W. McDonald
David W. McDonald

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 13, 2024, I served the foregoing by filing with the CM/ECF filing system of the court, which will automatically provide notice of the filing to all participants.

/s/ David W. McDonald
David W. McDonald